830 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The YOUGHIOGHENY AND OHIO COAL COMPANY, Petitioner,
v.
Martin O. WARREN, Director, Office OF WORKERS' Compensation
Programs, UNITED States Department of Labor, and
the Benefits Review Board, United States
Department of Labor, Respondents.
 No. 86-3778
 United States Court of Appeals, Sixth Circuit.
 September 30, 1987.
 
 Before CORNELIA G. KENNEDY, and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On May 4, 1979, Martin O. Warren filed a claim for benefits pursuant to the Black Lung Benefits Act, 30 U.S.C. Secs. 901 et seq. On May 23, 1980, the Acting Deputy Commissioner of the Office of Workers' Compensation Programs of the United States Department of Labor made an initial determination that the claimant was eligible for such benefits as of January 1, 1980. The claimant's employer, the Youghiogheny and Ohio Coal Company, contested this finding, but the claimant began receiving benefits as of the time of the initial determination. An administrative law judge decided that claimant was entitled to benefits, and that decision was affirmed by the Benefits Review Board. Prejudgment interest was awarded for a period commencing January 1, 1980.
 
 
 2
 The employer has appealed the board's decision on the merits, contending, among other things, that the decision was based on regulations that the agency was no longer permitted to use. The employer also challenged the award of prejudgment interest. We shall affirm on all issues except the last.
 
 
 3
 The claimant had twenty-six years of qualifying coal mine employment. All but one of his x-rays indicated the presence of pneumoconiosis. Applying 20 C.F.R. Sec. 727.203(a)(1), the ALJ held that the claimant was entitled to the benefit of an 'interim presumption' of total disability due to pneumoconiosis.
 
 
 4
 The ALJ also found that the interim presumption of disability had not been rebutted under 20 C.F.R. Secs. 727.203(b). The employer claimed to have rebutted the presumption by establishing that the claimant was able to do his usual coal mine work or comparable gainful work (see Sec. 727.203(b)(2)), but the ALJ concluded otherwise:
 
 
 5
 'Dr. G. O. Kress examined the claimant on October 8, 1979 and January 17, 1983. Dr. Kress made very thorough examinations of the Claimant, and in two exhaustive depositions, stated that, in his opinion, the Claimant was not totally disabled. Dr. Kress believed that the Claimant was capable of doing his usual coal mine work, although he was not sure what that coal mine work was. It is apparent that there is some question as to the extent of the claimant's disability. Drs. Tipton and Carniero [sic] consider the claimant to be totally disabled, and Dr. Kress does not consider the Claimant totally disabled, but perhaps '10 to 15 percent.' In light of the beneficent purposes of the Act, and resolving reasonable doubts in favor of the Claimant, I find that the evidence does not rebut the presumption under this subsection.'
 
 
 6
 The employer also claimed that the presumption had been rebutted under (b)(3) ('[t]he evidence establishes that the total disability . . . of the miner did not arise in whole or in part out of coal mine employment'), but the ALJ rejected that contention also:
 
 
 7
 'The claimant worked for 26 years in the coal mines and had no other industrial dust exposure. Drs. Tipton and Carniero believed that the Claimant's condition was related to coal mine employment, but Dr. Kress stated that the condition might be related to obesity and the Claimant's former cigarette smoking. I find that the evidence is not sufficient to rebut the presumption under this subsection.'
 
 
 8
 * The employer asserts on appeal that the ALJ should not have applied the interim regulations contained in 20 C.F.R. Sec. 727 because the claim was filed in 1979, a date after that by which 30 U.S.C. Sec. 931(c) required the Department of Labor to have issued new final regulations replacing the interim regulations.
 
 
 9
 30 U.S.C. Sec. 931(c) says that '[f]inal regulations required for implementation of any amendments to this part' shall be promulgated and published within six months after the month in which such statutory amendments are enacted. The Black Lung Benefits Act is divided into three parts; Sec. 931(c) is found in Part C. The 'new' regulations that the employer claims ought to have been promulgated by the time the claim was filed in 1979 were required by the 1978 amendments to 30 U.S.C. Secs. 902(f)(1) and (f)(2), sections that are found not in Part C but in Part A. Those sections require that the criteria for determining total disability with respect to claims filed after June 30, 1973 (Part C claims) be no more restrictive than those applicable to claims filed on June 30, 1973. (The regulations used by the ALJ here were, in fact those applicable to claims filed on June 30, 1973.) The employer would have us read 30 U.S.C. Sec. 931(c) as requiring promulgation, within six months, of 'regulations required for implementation of any amendments to statutory sections that affect claims governed by this part,' but that is not what the law says; it deals only with regulations required for implementation of 'amendments to this part.'
 
 II
 
 10
 In asking us to reverse the finding that the employer had failed to establish, under 20 C.F.R. Sec. 727.203(b)(2), that the claimant was 'able to do his usual coal mine work or comparable and gainful work,' the employer argues
 
 
 11
 'nowhere did the ALJ state that he found the medical opinions 'equally probative.' Rather, he indicated for (b)(2) rebuttal that he was 'resolving reasonable doubts in favor of the claimant.' Hence, at best the ALJ simply indicated that since two out of three doctors' reports raised some reasonable doubts, he would resolve those reasonable doubts in favor of the claimant. This is contrary to law as in rebuttal an ALJ must resolve and explain conflicts in the evidence leading to a finding based on the preponderance of the evidence.' (footnote omitted)
 
 
 12
 In its brief to the Benefits Review Board, however, the employer took a contrary stance, arguing that '[i]n essence, the Administrative Law Judge accepted the conclusions of Dr. Tipton and Dr. Carneiro as being of equal probative value as Dr. Kress' and resolved doubts in favor of the claimant.' Although the ALJ did not explicitly state how he resolved doubts and conflicts in the evidence, there is substantial evidence in the record to support the ALJ's (b)(2) determination. (Substantial evidence has been defined as more than a mere scintilla. It means that amount of evidence that a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971).)
 
 
 13
 In making the finding under (b)(2), the ALJ had to decide whether the claimant could perform his last job as a fire boss in the coal mines. The question was not whether the claimant was totally disabled in the way he would have had to be to qualify for benefits under the Social Security Act, but whether he was able to do his usual coal mine work. Ratliff v. Benefit Review Board, 816 F.2d 1121, 1123 (6th Cir. 1987). The ALJ thus had to determine the extent of the claimant's disability, and whether that disability prevented the claimant from performing his usual coal mine job.
 
 
 14
 All the doctors indicated that the claimant was disabled to some degree. Dr. Tipton and Dr. Carneiro believed that the claimant was totally disabled. Dr. Kress, the employer's doctor, thought that the extent of the claimant's disability was only ten to fifteen percent. The ALJ appears to have believed that the conclusion reached by Drs. Tipton and Carneiro was no less worthy of acceptance than that of Dr. Kress. There is substantial support for that conclusion. The record shows that Dr. Tipton relied on additional evidence that Dr. Kress did not consider. Dr. Tipton's report says, for example, that the claimant
 
 
 15
 'was expectorating in the range of 1/3 cup of mucous per day during the last few years in the mines. There was a considerable amount of black coal dust content. At times the mucous had a yellowish color . . . [h]e continues to expectorate a yellowish dark looking mucous which amounts from about two teaspoonsful [sic] to 1/4 of a cup.'
 
 
 16
 Dr. Tipton's readings of the the X-rays, blood gas studies and ventilation studies did not contradict those of Dr. Kress; rather he placed less importance upon them and relied on other evidence. The legislative history indicates that Congress knew there would be instances in which not all the objective medical evidence would show the presence of pneumoconiosis, but pneumoconiosis would nonetheless be found. H.R. Rep. No. 95-151, 95th Cong., 2nd Sess. 6, reprinted in 1978 U.S. Code Cong. & Admin. News, 237, 242.
 
 
 17
 The second part of the (b)(2) determination requires that the claimant's disability be assessed in terms of its effect on the claimant's ability to perform his last coal mine job or comparable work. The ALJ found that although Dr. Kress believed that the claimant was capable of doing his usual coal mine work, Dr. Kress was not sure what that coal mine work was. If Dr. Tipton's report is compared with that of Dr. Kress, the ALJ's finding does not seem an impermissible one. Dr. Tipton said the claimant
 
 
 18
 'was working at a combination slope and shaft mine. He occasionally had to walk up the slope. There was no man trip to pull him up. He states that he stopped several times before he got to the top of the slope. The slope was at 16 degree angle and was 1800 feet in length. He states that he stopped in the range of 10 to 12 times before he reached the top of the slopes. Fortunately the enter the used only in cases of emergency. He did use the slope to enter the mine but not leave the mine except during the emergency situations.'
 
 
 19
 Dr. Kress, on the other hand merely states '[t]he last 5 years he was the fire boss and this entailed walking and inspecting throughout the mine.'
 
 
 20
 Dr. Kress' deposition testimony also offers substantial evidence for the ALJ's finding:
 
 
 21
 'Q: Now, what exactly do you understand his job as a fire boss was?
 
 
 22
 A: Now, again, I don't know that I asked him specifically but I have talked to people who have worked as a fire boss and I heard them testify to their duties.
 
 
 23
 Q: But you didn't ask him specifically what his job was?
 
 
 24
 A: Except he said it took him throughout the mine.
 
 
 25
 Q: So any opinion that you would give as to his disability, insofar as that particular job is concerned, would be a guess on something you heard someplace else that fire bosses do?
 
 
 26
 A: No. Any opinion I have expressed regarding his ability, I would have assumed that he worked hard, that it wasn't a sit-down job or a stand-around job.
 
 
 27
 Q: How far would you say that, in your opinion, from your history and so forth, that he walked per day?
 
 
 28
 A: I wouldn't have any idea but I know, again, I have heard them say they walk eight or ten miles.'
 
 III
 
 29
 The employer also contends that the evidence showed that the claimant's disability did not arise out of coal mine employment, and the ALJ ought therefore to have held that the disability presumption was rebutted under 20 C.F.R. Sec. 727.203(b)(3).
 
 
 30
 The ALJ was wrong in stating that Dr. Kress said that the claimant's condition 'might be related to obesity and the claimant's former cigarette smoking;' the doctor's supplemental deposition testimony clearly indicates that he thought the claimant had no impairment related to smoking. The ALJ's error hardly means that the presumption had been overcome, however. As noted, all three doctors, including Dr. Kress, diagnosed the presence of pneumoconiosis. The ALJ found that the claimant had worked for twenty-six years in coal mines and had no other industrial dust exposure. It is true that Dr. Kress believed that some of claimant's disability arose from other factors, but the presumption of disability can be rebutted under Sec. 727.203(b)(3) only if the evidence establishes that the miner's inability to perform his usual work did not arise out of coal mine employment 'in whole or in part . . ..' (emphasis supplied).
 
 IV
 
 31
 The Director of the Office of Workers' Compensation Program has argued that the pre-judgment interest issue should not be considered because it was not raised before the Benefits Review Board. In Kyle v. Director, Office of Workers' Compensation Programs, 819 F.2d 139, 142 (6th Cir. 1987), however, this court held that when it would have been 'futile' to raise an issue below, that issue may be considered on appeal.
 
 
 32
 That holding governs this case. The Benefits Review Board has consistently held that 20 C.F.R. Sec. 725.608(a) requires the assessment of interest from the date of the claimant's eligibility under the Act. In 1983, when the employer would have been required to file its brief with the Benefits Review Board, the Board had reaffirmed its position in Kuhar v. Bethlehem Mines Corp., 5 Black Lung Rep. 1-765, 778 (1983), vacated inn relevant part sub nom., Bethlehem Mines Corp. v. Director, OWCP and Kuhar, No. 83-3226 (3d Cir. Aug. 12, 1983). Although the courts of three circuits have disagreed, and the Director has taken a position contrary to that of the Board, the Board continues to adhere to its position. It would thus have been 'futile' for the employer to raise this issue before the Benefits Review Board, and we will consider this issue.
 
 20 C.F.R. 725.608(a) states:
 
 33
 'If an operator or other employer fails or refuses to pay any or all benefits due under the terms of an initial determination by a deputy commissioner (Sec. 725.420), a decision and order filed and served by an administrative law judge (Sec. 725.478) or a decision filed by the Board or a United States court of appeals, including any penalty awarded in addition to benefits in accordance with Sec. 725.607, such operator shall be liable for simple annual interest on all past due benefits computed from the date on which such benefits were due and payable.'
 
 
 34
 The Director, as noted above, agrees with the employer that Sec. 725.608(a) requires payment of interest only from the initial determination date, and the Director has argued that the Benefits Review Board is not according his interpretation the deference it is owed pursuant to 30 U.S.C. Sec. 936(a).
 
 
 35
 Congress appears to have seen things much as the Director does. In 1981, when Congress dealt with this issue in regard to claims filed after enactment of the amendments, it provided in 30 U.S.C. Sec. 932(d) that:
 
 
 36
 'With respect to payments withheld pending final adjudication of liability, in the case of claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, such interest shall commence to accumulate 30 days after the date of the determination that such an award should be made.'
 
 
 37
 This portion of the statute was not supposed to change the date from which interest was to accrue. Rather, the legislative history indicates that it was enacted so that Congress could raise the interest rate. H. R. Rep. No. 97-406, 97th Cong., 1st Sess. 4, reprinted in 1981 U. S. Code Cong. & Admin. News 2671, 2673.
 
 
 38
 Believing that the Director's position is the correct one, we REMAND the case for a recalculation of interest. In all other respects, the decision of the Benefits Review Board is AFFIRMED.