884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The YOUGHIOGHENY & OHIO COAL CO., Petitioner,
v.
Delores TULODZIESKI, and Director, Office of Workers'
Compensation Program, Department of Labor, Respondents.
 No. 88-3712.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1989.
 
 Before KEITH and WELLFORD, Circuit Judges, and HORACE W. GILMORE*, District Judge.
 PER CURIAM.
 
 
 1
 This black lung case concerns the eligibility for benefits of a deceased coal miner, Henry Tulodzieski. The claimant in this case is Henry's widow, Delores Tulodzieski. The administrative law judge (ALJ), after a hearing on the application for benefits under the Act, found that the claimant had demonstrated the existence of disabling pneumoconiosis attributable to coal mine employment and awarded benefits. The question in this appeal is whether the ALJ properly assigned the greater weight to the opinion of the autopsy examiner over conflicting opinions of two other physicians. We find the autopsy examiner's opinion to constitute substantial evidence, and we affirm.
 
 
 2
 The deceased miner was born in 1921 and had a tenth grade education. At the time of the initial filing for benefits, Tulodzieski was 58 years of age and had completed more than forty years of coal mine employment. His last regular job was as an underground mechanic whose duties included repairing mine machinery, performing preventive maintenance, and troubleshooting of electrical and hydraulic problems. His work called for strenuous physical labor. Tulodzieski stopped work in January 1979 because of shortness of breath and coughing.
 
 
 3
 In a 34-page decision and order, the ALJ described the detailed and complicated medical evidence in this case. He found the x-ray evidence to be sufficient to invoke the interim presumption pursuant to 20 C.F.R. Sec. 727.203(a)(1). Drs. J. J. Yobbagy, George O. Kress, and J. S. Gordonson, all of whom were qualified for the interpretation of chest x-rays as Board-certified radiologists or as B readers, performed x-rays that were positive for the existence of obstructive lung disease. Only one physician, Dr. C. L. Anderson, reported a negative reading from an x-ray specifically performed for the presence of pneumoconiosis.
 
 
 4
 The ALJ also found the claimant had failed to carry the burden necessary to invoke the presumption under the ventilatory studies section of the Act. The interim presumption may be invoked pursuant to subsection (a)(4) if the miner establishes, through the preponderance of other medical evidence, including the opinions of physicians exercising reasoned medical judgment, the presence of a totally disabling respiratory or pulmonary impairment. Meadows v. Westmoreland Coal Co., 6 BLR 1-773 (1984).
 
 
 5
 After he retired, Tulodzieski was hospitalized with marked shortness of breath and other symptoms. He was diagnosed as having renal failure along with respiratory failure. The examining physician, Dr. Eicher, noted that the claimant's lung problems were due either to his renal failure or a prior viral infection. The discharge summary indicates that "his lungs cleared up completely."
 
 
 6
 The claimant was hospitalized again in March 1979 because of his renal failure, and a chest x-ray was "essentially unremarkable" at that time. The following month, Tulodzieski was hospitalized for a third time because of a clotted AV shunt and chronic renal failure. The employer points out that in none of these 1979 hospitalizations was pneumoconiosis indicated as a serious medical condition. The renal failure, however, was sufficiently serious to cause the miner to apply for sickness and accident benefits pursuant to a life insurance policy provided by the Y & O, whose company physician found Tulodzieski to be totally disabled due to the renal failure.
 
 
 7
 After Tulodzieski filed his black lung application in April 1979, he was medically examined in order to evaluate the presence of black lung. As previously mentioned, x-ray evidence developed at this time, in addition to the pathological reports developed after the miner's death, indicated that there was pneumoconiosis which invoked the 20 C.F.R. Sec. 727.203(a)(1) presumption of total disability due to pneumoconiosis. That finding is essentially uncontested.
 
 
 8
 Dr. Kress conducted a July 1979 pulmonary function study and concluded with the diagnosis that the claimant was suffering from coal workers' pneumoconiosis and mild chronic bronchitis, in addition to other maladies. The pneumoconiosis was "still of an early, simple stage," and Dr. Kress found claimant to be disabled as of that time, but not because of pneumoconiosis.
 
 
 9
 The ALJ weighed the opinions of several physicians pursuant to 20 C.F.R. Sec. 727.203(a)(4). A May 1979 report by Dr. Carneiro found the miner to be totally disabled from further coal mine employment, but did not find this disability to be attributable to his pneumoconiosis as distinguished from his kidney disease. A July 5, 1985 letter from Dr. Carneiro indicated that Tulodzieski had been "rendered unfit" for coal mine employment by his pneumoconiosis. The ALJ found the reports of Dr. Carneiro to be too ambiguous, however, to support a subsection (a)(4) invocation.
 
 
 10
 Only the opinions of Drs. Kress, Kleinerman, and Eicher address the question of lifetime disability attributable, at least in part, to legal pneumoconiosis under subsection (a)(4). Dr. Kleinerman found the miner's simple pneumoconiosis not to be totally or partially disabling. The report does suggest that asbestosis might have caused some functional compromise, making it difficult to evaluate the miner's ability to do his usual coal mine work. The ALJ found, therefore, that Dr. Kleinerman's report did not rule out a totally disabling chronic lung impairment, but did not affirmatively establish this condition.
 
 
 11
 The employer in this case stresses the opinion of Dr. Kress, who examined the miner once about thirteen months before his death. After the miner's death, Dr. Kress reviewed various medical records in conjunction with the summary of his opinions, including Dr. Eicher's autopsy protocol and Dr. Kleinerman's report. He did not, however, review the autopsy slides, and he was not present when the autopsy was performed. Dr. Kress was of the opinion that Tulodzieski was not disabled due to his respiratory or pulmonary impairment. The ALJ noted that "Dr. Kress repeatedly changed his description and explanation of the pulmonary function results of record, consistently in a manner apparently favorable to the employer." The ALJ found Dr. Kress' opinions to be less credible than those of Dr. Kleinerman and Dr. Eicher.
 
 
 12
 The strongest evidence presented by the claimant in favor of subsection (a)(4) invocation was the September 9, 1980 autopsy protocol of Dr. Eicher and his supplemental letter of July 24, 1985. Dr. Eicher described the presence of "advanced" anthracosilicosis with "extensive" chronic obstructive pulmonary disease. The supplemental letter, based on Dr. Eicher's review of the autopsy report, contains his personal observations during the autopsy, a review of the microscopic slides, and his conclusion respecting the "advanced" nature of the miner's pneumoconiosis. He found that the pneumoconiosis was of a longstanding nature. Dr. Eicher's view is described as in complete agreement with Dr. Carneiro's earlier clinical evaluation of a totally and permanently disabling respiratory condition resulting from coal mine employment. While the ALJ did not accept Dr. Carneiro's evaluations, he did conclude that Dr. Eicher's conclusions were clearer and were phrased in terms that could support a subsection (a)(4) invocation. The ALJ also concluded that the employer, Y & O, did not establish rebuttal under Sec. 727.203(b)(3) or (b)(4) because the Y & O failed to show a "significant relationship between the miner's total disability or death and his occupational exposure." See Shaw v. Bradford Coal Co., 7 BLR 1-462 (1984); Borgeson v. Kaiser Steel Corp., 8 BLR 1-312, 1-314 (1985). "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3). The procedural regulations of 20 C.F.R. Sec. 802.301 reflect this limited scope of review. The standard simply requires the court of appeals to determine whether the ALJ's decision is supported by substantial evidence.
 
 
 13
 The employer asserts error in the reliance by the ALJ on the opinion of Dr. Eicher in view of the contrary opinions of Dr. Kress and Dr. Kleinerman. All that is required to affirm the administrative holding, however, is that the findings of Dr. Eicher, viewed in the context of the record as a whole, constitute substantial evidence of disabling pneumoconiosis. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359 (1965); 33 U.S.C. Sec. 921(b)(3). The ALJ articulated legitimate reasons for his reliance upon Dr. Eicher's diagnosis.
 
 
 14
 The ALJ's determination that Dr. Eicher's opinions were more credible than those of Drs. Kress and Kleinerman was not unreasonable in light of the entire record. The ALJ was impressed by Dr. Kleinerman's credentials, but Dr. Eicher was a Board-certified pathologist and was therefore "adequately credentialed" to conduct the autopsy and render opinions based on his findings. Dr. Kleinerman had the advantage of reviewing lifetime clinical data along with the autopsy reports and observations from the histological slides. Dr. Eicher, on the other hand, was in the unique position as the original prosecutor and the only physician to review both the autopsy materials and examine the claimant. Dr. Eicher stated unequivocally:
 
 
 15
 Death was the result of bilateral, acute suppurative confluent bronchopneumonia along with chronic renal failure. The major contributory factor with the presence of advanced anthracosilicosis with extensive chronic obstructive pulmonary disease.
 
 
 16
 The ALJ's reliance upon Dr. Eicher's unique view of the entire chest cavity in combination with the microscopic slide material appears to be rational.
 
 
 17
 In survivors' claims, invocation of the interim presumption gives rises to two concurrent presumptions: that the miner was totally disabled due to pneumoconiosis at the time of his death, and that the miner died due to pneumoconiosis. Both of these presumed sets of facts must be rebutted for the claim to be denied. Napier v. Bethlehem Steel Corp., 5 BLR 1-1 (1982).
 
 
 18
 The employer contends that the ALJ should have found that the employer accomplished rebuttal pursuant to 20 C.F.R. Sec. 727.203(b)(2) and (b)(3). Subsection (b)(2) permits rebuttal upon a showing that the miner was able to do his usual coal mine work or comparable and gainful work. The Benefits Review Board has held that this rebuttal may be accomplished by proving the miner did not suffer from a respiratory or pulmonary impairment, or by showing that such impairment was not totally disabling. Sykes v. Itmann Coal Co., 2 BLR 1-1089 (1980). Weighing all the evidence, the ALJ again concluded that the miner suffered from a totally disabling respiratory or pulmonary impairment during his lifetime. In their rebuttal, Y & O relied on the opinions of Dr. Kress and Dr. Kleinerman, which the ALJ had already found to be less convincing than the opinion of Dr. Eicher. Because Dr. Eicher's opinions concerning lifetime impairment were more recent and more persuasive than the evidence proffered by the Y & O, the ALJ determined that the Y & O had not accomplished rebuttal pursuant to subsection (b)(2). We find substantial evidence supporting this view.
 
 
 19
 Rebuttal is established under subsection (b)(3) by showing by a preponderance of the evidence that the total disability or death of the miner did not arise in whole or in part out of his coal mine employment. The relevant inquiry pursuant to subsection (b)(3) concerns the cause, rather than the degree, of the miner's respiratory or pulmonary impairment. Aleshire v. Central Coal Co., 8 BLR 1-70 (1985). The party opposing entitlement must establish "no significant relationship" between the miner's total disability or death and his occupational exposure. Shaw v. Bradford Coal Co., 7 BLR 1-462 (1984). Dr. Eicher specifically found that the miner suffered from a totally disabling respiratory or pulmonary condition resulting, at least in part, from coal mine employment. The ALJ credited these findings and opinions concerning the severity of the miner's legal pneumoconiosis. There is no suggestion in the record, in either the reports of Dr. Kress or of Dr. Kleinerman, or in any other report, that the miner's pneumoconiosis had an origin other than his forty years of coal mine employment.
 
 
 20
 For the foregoing reasons, we affirm the determination that claimant was entitled to benefits.
 
 
 21
 There is some dispute as to when interest on the sum due begins to run against the operator for the interim payments made by the Director to the claimant. In Y & O v. Warren, 841 F.2d 134, 11 BLR 2-73, 2-79 (1987), we held that interest commences thirty days after the date of "initial determination of entitlement." See 30 U.S.C. Sec. 932(d); 20 C.F.R. Sec. 725.608(a). The Benefits Review Board stated that the deputy commissioner made his initial determination awarding benefits on September 18, 1979. The record does not reflect what information the Benefits Review Board relied on.
 
 
 22
 Y & O, on the other hand, cites a document that is in the Joint Appendix and which would indicate that the "initial determination" date was June 6, 1980. We find, therefore, that interest begins thirty days after June 6, 1980.
 
 
 23
 We AFFIRM the award of benefits and award interest after June 6, 1980.
 
 
 
 *
 THE HONORABLE HORACE W. GILMORE, United States District Court for the Eastern District of Michigan, sitting by designation