**James D. WILLIAMS, Plaintiff, Appellee,**

v.

**John JONES d/b/a Nicole Enterprises,
Defendant, Appellant.**

**No. 93–1054.**

United States Court of Appeals,
First Circuit.

Heard June 9, 1993.

Decided Dec. 3, 1993.

Marshall J. Tinkle, with whom Thompson, McNaboe, Ashley & Bull, Portland, ME, was on brief, for defendant, appellant.

Douglas C. Baston, with whom Howard & Bowie Law Offices Damariscotta, ME, was on brief, for plaintiff, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

■ In 1978, plaintiff-appellee James Williams was injured as a result of a fall from the boom of a fishing vessel owned by his employer, defendant-appellant John Jones, d/b/a Nicole Enterprises (Jones). After Williams was diagnosed with a herniated disc, he filed a claim against Jones for compensation benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50.[1] In March 1981, a Department of Labor (DOL) administrative law judge (ALJ) found that Williams had a "temporary total disability," see id. § 908(b), and ordered Jones to commence immediate payments to Williams in an amount equal to two-thirds of Williams's average weekly wage of $250, effective from October 1978.[2] See id. §§ 906, 910. Notwithstanding two successful appeals to the Benefits Review Board (BRB) by Jones, see id. § 921(b),[3] ultimately the BRB affirmed a

---

1. The LHWCA is a comprehensive statutory scheme governing compensation for covered employees (e.g., longshoremen) due to loss of earning capacity caused by injuries sustained while engaged in "maritime employment" upon the navigable waters of the United States, or upon designated lands adjoining those waters. See 33 U.S.C. §§ 902, 903. Like state workers' compensation statutes, the LHWCA contemplates a relinquishment of substantive rights by both parties; employers are liable for compensation to the disabled employee "irrespective of [the employers'] fault," id. § 904, while employees' LHWCA administrative and judicial remedies against their employer are exclusive, see id. § 905; see also Potomac Elec. Power Co. v. Director, Office of Workers Compensation Programs, 449 U.S. 268, 281–82, 101 S.Ct. 509, 516–17, 66 L.Ed.2d 446 (1980); Ceres Gulf v. Cooper, 957 F.2d 1199, 1205 (5th Cir.1992).

After sustaining a work-related injury, a covered employee must provide written notice to his employer within 30 days from the date upon which he should have discovered his disability, in the exercise of reasonable diligence. See 33 U.S.C. § 912. Within 14 days of such notice, or after obtaining actual or constructive knowledge of the employee's disability, the employer must either (1) commence payments to the employee in an amount equal to two-thirds of the employee's "average weekly wages," see id. §§ 906, 908, 910, or (2) notify the United States Department of Labor (DOL) that the employee's right to compensation will be contested, specifying the grounds. See id. § 914(d). If the employer contests, the employee has one year from the date of his injury, or one year from the employer's last voluntary payment, to file a written claim with the DOL. See id. § 913; see also 20 C.F.R. §§ 702.201–702.286 (1993).

2. Within ten days after the employee files an administrative claim, see supra note 1, the DOL must cause notice to be served on all interested parties, including the employer, see id. § 919(b), and conduct all necessary investigations of the employee's claim, see id. 919(c); see also 20 C.F.R. §§ 702.331–702.351 (1993). At least ten days' notice of the § 919 evidentiary hearing must be provided to all interested parties, by personal service or registered mail. Id. Section 919 evidentiary hearings are conducted pursuant to the Administrative Procedures Act, 5 U.S.C. § 554, by an ALJ. Within 20 days after the hearing, the ALJ must either reject the employee's claim, or issue a compensation order designating the extent of the employee's "disability" (e.g., permanent total, temporary total, permanent partial) and setting the amount of biweekly compensation. The ALJ's compensation order becomes "effective" as soon as it is duly filed in the appropriate DOL office and notice of the filing is mailed to the employee and the employer. Id. §§ 919(e), 921(a). The employer's obligation to pay compensation to the employee commences on the date the ALJ's compensation order becomes "effective."

3. See Williams v. Nicole Enters., Inc., 15 Ben. Rev.Bd.Serv. 453 (1983); Williams v. Nicole Enters., Inc., 19 Ben.Rev.Bd.Serv. 66 (1986). "Effective" compensation orders remain non-"final" pending appeal. Once an ALJ's compensation order becomes "effective," the nonprevailing party has 30 days to appeal the order (or the ALJ's rejection of the claim) to the BRB, a three-member appellate panel within the DOL. See 33 U.S.C. § 921(b). The BRB must accept all ALJ factual findings supported by "substantial evidence." Id. If the BRB affirms, the nonprevailing party may petition for judicial review by the

compensation award in favor of Williams. We denied Jones's petition for judicial review in 1990. *See id.* § 921(c). Notwithstanding the finality of the compensation award for LHWCA purposes, *see supra* note 3, Williams alleges that he has received only $450 in benefit payments from Jones to date.

On August 7, 1992, Williams brought the present enforcement action in federal district court, pursuant to LHWCA subsections 921(d) and (e):

> (d) If any employer or his officers or agents fails to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order to the Federal district court for the judicial district in which the injury occurred.... *If the court determines* that the order was made and served in accordance with law, *and* that such employer or his officers or agents have failed to comply therewith, the *court shall enforce* obedience to the order *by writ of injunction or* by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

> (e) Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, *shall not be instituted otherwise than as provided* in this section....

33 U.S.C. § 921(d), (e) (emphasis added).

Jones opposed the petition for enforcement on the grounds that "newly discovered" evidence revealed that Williams secured the award through perjury and fraud, and that the enforcement petition was not served on

Jones in compliance with Fed.R.Civ.P. 4. A magistrate judge recommended that the petition for enforcement be granted because Jones was precluded, as a matter of law, from pleading these defenses in an enforcement action brought pursuant to LHWCA section 921(d). Jones's appeal from the district court order adopting the magistrate judge's recommended decision presents two important issues of first impression relating to the LHWCA's enforcement provisions.

## I. *Insufficient Process and Service of Process.*

Jones concedes actual notice of the filing of the section 921(d) enforcement petition with the district court, but pleads insufficient process and insufficient service of process, *see* Fed.R.Civ.P. 12(b)(4), (5), based on Williams's admitted failure to serve Jones pursuant to Fed.R.Civ.P. 4. *See Durbin Paper Stock Co. v. Hossain,* 97 F.R.D. 639, 639 (S.D.Fla.1982) ("Service of process is not effectual on an attorney solely by reason of his capacity as an attorney, [but] [t]he party must have appointed his attorney as his agent for service of process.") (collecting cases); *cf.* Fed.R.Civ.P. 5(b).[4]

The Federal Rules of Civil Procedure apply in section 921(d) enforcement proceedings "except to the extent that matters of procedure are provided for in [the LHWCA]." Fed.R.Civ.P. 81(a)(6). As section 921(d) is silent on the procedures for filing, serving, and answering an enforcement petition in the district court, Jones reasons that service of process was required in accordance with Fed.R.Civ.P. 4 and 81(a)(6); without it, he argues, the district court did not obtain personal jurisdiction over him.

---

appropriate court of appeals, which will apply the same "substantial evidence" standard of review to the ALJ's factual findings, but otherwise has jurisdiction to affirm, modify, set aside, *or enforce* the ALJ's compensation order. *Id.* § 921(c). If no party appeals the ALJ's order to the BRB, it becomes "final" 30 days after the parties are notified that it has been filed in the appropriate DOL office pursuant to § 919(e). *Id.* § 921(a).

4. Rule 12(b)(4) and (5) defenses may be waived if not timely asserted. *Marcial Ucin, S.A. v. SS*

*Galicia,* 723 F.2d 994, 996 (1st Cir.1983). Jones's first "response" to Williams's petition, filed on August 21, 1992, did not contest service of process pursuant to Fed.R.Civ.P. 12(h)(1)(A). Five days later, however, Jones filed his answer and counterclaim, raising the insufficient process and service of process defenses in timely fashion. *See* Fed.R.Civ.P. 12(h)(1)(B) (defense not waived if raised in "matter of course" Rule 15(a) amendment to responsive pleading within 20 days of initial answer). *See Glater v. Eli Lilley & Co.,* 712 F.2d 735, 738 (1st Cir.1983).

 The magistrate judge rejected Jones's argument, citing *Jourdan v. Equitable Equip. Co.*, 889 F.2d 637 (5th Cir.1989), a case involving companion LHWCA section 918(a). Section 918(a) enforcement proceedings normally are used to enforce compensation awards which have become "effective" but are not yet "final"; that is, during the pendency of an appeal to the BRB from the ALJ's initial award, or from the BRB to the court of appeals. *See supra* notes 2 and 3. Within one year after an employer's default, the employee may apply to an ALJ for a "supplementary order" declaring the amount in default. The ALJ may not issue the supplementary order except "[a]fter investigation, [and] notice, and hearing." Even then, however, the supplementary order is not self-executing. Rather, the claimant, or the ALJ, must file a certified copy of the supplementary order with the appropriate federal district court, which "*shall upon filing* of the copy enter judgment for the amount declared in default ... if such supplementary order is in accordance with law." [5]

The *Jourdan* court held that the obligatory language of section 918(a) evinced a clear congressional intent to dispense with the "service of process" requirements of Fed. R.Civ.P. 4 in a section 918(a) enforcement proceeding brought in the district court. The magistrate judge in the present case, analogizing from *Jourdan*, reasoned that,

> [l]ike Section 918(a), Section 921(d) utilizes imperative language; upon certain findings the court "shall enforce." The only difference is the *lack of specificity* regarding the method for filing the "application." In ei-

ther case, the court must make preliminary findings that amount to nothing more than a procedural review of the *underlying process*. Assuming there were *no procedural errors at the administrative level*, the court has *no choice* but to enforce the order. Again, the court has no jurisdiction over the merits of the action. *The aggrieved party would have no additional opportunity to be heard even if notice were provided according to the strict requirements of Rule 4*. The logical conclusion is that Section 921(d) is a summary proceeding, and that upon filing of appropriate documentation showing that the order is final, that it was properly served, and that the employer has failed to comply, the court should issue the order.

*Williams v. Jones,* No. 92–0156–B, slip op. at 6 (D.Me. Oct. 27, 1992) (recommended decision) (emphasis added).

Assuming, *arguendo*, that *Jourdan* is correctly decided, section 921(d) is insufficiently analogous to section 918(a) to bear the weight given it in the recommended decision below. Section 918(a)'s bifurcated enforcement mechanism *requires administrative notice* to the employer, as well as an opportunity to be heard, *prior* to the entry of any supplementary enforcement order by the ALJ. *See supra* notes 2 and 5. Long before the employee ever files the ALJ's certified supplementary order with the district court, therefore, the procedural requirements of section 918(a) itself have assured that the employer was placed on notice of the impending judicial enforcement proceeding. The district court is expressly charged with de-

---

5. LHWCA § 918(a) provides, in pertinent part: (a) In case of default by the employer in the payment of compensation due under any award of compensation for a period of thirty days after the compensation is due and payable, the person to whom such compensation is payable may, within one year after such default, make application to the [ALJ] making the compensation order for a supplementary order declaring the amount of the default. After investigation, notice, and hearing, as provided in section [919], the [ALJ] shall make a supplementary order, declaring the amount of the default, which shall be filed in the same manner as the compensation order. In case the payment in default is an installment of the award, the [ALJ] may, in his discretion, declare the whole of the award as the amount in default. The applicant may file a certified copy of such supplementary order with the clerk of the Federal district court for the judicial district in which the employer has his principal place of business or maintains an office, or for the judicial district in which the injury occurred.... Such supplementary order shall be final, and the court shall upon the filing of the copy enter judgment for the amount declared in default by the supplementary order if such supplementary order is in accordance with law. Review of the judgment so entered may be had as in civil suits for damages at common law.
 33 U.S.C. § 918(a).

termining whether "such supplementary order [was] in accordance with law." 33 U.S.C. § 918(a). Thus, section 918(a) envisions an ancillary district court mechanism for enforcing supplementary enforcement orders entered by the ALJ. Arguably, at least, this is the sort of administrative alternative to service of process which would preempt the Rule 4 service of process requirement under Fed.Rule Civ.P. 81(a)(6).[6] In contrast, however, no notice to the employer is required prior to the commencement of a section 921(d) enforcement action in the district court. *See supra* p. 251.

In addition, we detect no intimation, either in the statutory language or legislative history, that Congress contemplated a section 921(d) proceeding quite so summary as indicated in the recommended decision. Even assuming that a full panoply of equitable defenses is not available to an employer in a section 921(d) enforcement action, *see infra* pt. II, it is nonetheless clear that the employer may contest factual allegations upon which the section 921(d) enforcement petition necessarily depends,[7] including the main issue *whether the employer is in default.* Moreover, arguably at least,. the employer might be entitled to raise factual challenges relating to (1) the amount in default,[8] (2) whether new evidence indicates that the initial compensation order was procedurally defective, or otherwise not "in accordance with law," or (3) employee conduct that might tilt the fundamental balance of equities in favor of judicial restraint. *See infra* note 18. Moreover, unlike the *bifurcated* process involved in a section 918(a) enforcement proceeding, which presumes prior notice and hearing at the administrative level, section 921(d) constitutes the district court the em-

6. Analogous Rule 81(a)(5), governing the applicability of the Civil Rules to NLRB proceedings, likewise illuminates the present inquiry. *See* Fed.R.Civ.P. 81(a)(5) ("in respects not covered by [29 U.S.C. §§ 159, 160] the practice in the district courts shall conform to these rules as far as applicable"). In contrast to LHWCA § 921(d), however, the NLRB sections referenced in Rule 81(a)(5) contain detailed provisions relating to the filing of a petition to enforce an NLRB order. *See* 29 U.S.C. § 160(e) ("Upon filing of such a petition, the *court* shall cause notice thereof to be served upon such person, and *thereupon shall have jurisdiction of the proceeding* and of the question determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper....") (emphasis added).

7. Although clearly treated by the parties and the district court as a § 921(d) action, Williams's petition for enforcement is an odd hybrid. Initially, Williams presented his petition for enforcement to the DOL. In a June 30, 1992 letter to Williams, the District Director of the DOL determined that the compensation order was "final," that it was made and administratively served "in accordance with law," and that Jones was in default on payments. Under § 921(d), these administrative determinations were supererogatory. Unlike § 918(a), § 921(d) expressly reserves such matters for resolution by the district court. *See* 33 U.S.C. § 921(d) ("*If the court determines* that the order was made and *served* in accordance with law....") (emphasis added). Although the district court correctly noted that Jones did not contest these matters (*e.g.*, the giving of notice as required in the *administrative* proceedings under § 919), the applicability of the Rule 4 service of process requirement is not made to depend, *see* Fed.R.Civ.P. 81(a)(6), upon whether the defendant-employer *received* notice in the administrative proceeding, but whether "matters of procedure are *provided for in*" the LHWCA, *id.* (emphasis added). Since there is no LHWCA provision governing service of process upon the defendant employer in a § 921(d) judicial enforcement proceeding, the district court erred in determining that service of process in accordance with Fed.R.Civ.P. 4 and 81(a)(6) was not necessary.

Moreover, although the DOL letter of June 1992 contained findings analogous to those required under LHWCA § 918(a), *see supra* note 5, it could not qualify as a § 918 "supplementary order," since (1) there is no record evidence that Jones contemporaneously received the letter, or any notice of it, (2) the DOL did not conduct a § 919 hearing prior to issuance of the letter, (3) the copy of the DOL letter filed with the district court enforcement petition was not "certified," and (4) Williams's district court petition specifically invokes subject matter jurisdiction under section 921(d) only.

8. Williams conceded that Jones was making payments at the time of the district court order, but insisted that the enforcement petition sought to compel payment of the *"arrearages"* dating from October 1978. The magistrate judge concluded that § 921(d) differed from § 918(a), in that it permits the enforcement of prospective compensation orders only, compelling future payments to be made as they come due but not recoveries of past due payments. *Williams,* slip op. at 3 (citing *Henry v. Gentry Plumbing & Heating Co.,* 704 F.2d 863 (5th Cir.1983)). Since Williams has not cross-appealed, we do not address this question.

ployer's *first* and *only* forum for a full hearing of such factual disputes prior to the issuance of an injunctive enforcement order, with its attendant exposure to coercive contempt proceedings.

The recommended decision observes that even without a formal Rule 4 service of process requirement the district court could notify an employer *informally* in those cases where the court believed that an employee's petition for enforcement involved controverted factual matters. But of course such an approach could afford adequate safeguards only if the factual conflicts were apparent *on the face of the employee's petition* for enforcement. Otherwise, there could be no assurance that the respondent-employer would have either notice or opportunity to assert a challenge. Thus, to construe Rule 81(a)(6) as excepting section 921(d) enforcement actions from the service of process requirements of Rule 4, merely because the employer did not interpose opposition to the enforcement petition, could expose employers to *ex parte* enforcement orders.

Finally, Williams suggests that requiring service of process in a section 921(d) enforcement proceeding could subvert the LHWCA goal of ensuring prompt compliance with compensation orders. Granting the premise of Williams's LHWCA policy argument in principle, whatever slight delay might be occasioned by requiring proper service of process in order to enable the court to obtain in personam jurisdiction over employers hardly seems inappropriate, especially in light of the simplicity of the procedure.[9]

■ Sections 918(a) and 921(d) serve distinct roles in the LHWCA remedial scheme. Section 918(a) designedly affords injured em-

ployees a convenient, inexpensive, and expeditious mechanism for facilitating enforcement of "effective" compensation awards even before they have become *"final"*. Congress anticipated the severe financial hardships that could beset injured employees as a result of lengthy appeals. It therefore settled on the section 918(a) enforcement action as a simple means to compel prompt employer compliance with an enforcement award even though it might later be set aside on review. *See, e.g., Tidelands Marine Serv. v. Patterson,* 719 F.2d 126, 129 (5th Cir.1983) (§ 918(a) implements "a theme central to the spirit, intent, and purposes of the LHWCA"); *Henry,* 704 F.2d at 865.[10] For some reason not disclosed in the appellate record, however, Williams failed to invoke the convenient, prompt, and inexpensive enforcement mechanism established under section 918(a) throughout the ten-year period spanned by Jones's numerous appeals. *Cf., e.g., Cassell v. Taylor,* 243 F.2d 259, 260 (D.C.Cir.1957) (one-year statute of limitations under § 918(a) bars recovery on supplemental order filed sixteen years after default on compensation award payments); *supra* note 5. Moreover, Williams chose not to cross-appeal from the district court's ruling that section 921(d) could not be used to recover *past-due* payments. *See supra* note 8. The avoidable and unexplained delay in Williams's efforts to recover these past-due compensation payments from Jones, however ill advised or unfortunate, does not permit disregard of the service of process requirements applicable to section 921(d) enforcement proceedings, particularly since compliance will entail no significant further delay.[11] *But cf. infra* pt. II.B.

Furthermore, proper service of process is no empty procedural exercise where an em-

---

**9.** Other types of minor procedural delays have not foreclosed agency recognition of the applicability of the Civil Rules to the LHWCA by virtue of the gap-filling mandate in Fed.R.Civ.P. 81(a)(6). For instance, Civil Rule 6(e), which permits additional time (3 days) for compliance after service by mail, has been held applicable in LHWCA enforcement proceedings. *See, e.g., Johnson v. Diamond M Co.,* 14 Ben.Rev.Bd.Serv. 694, 696 (1982) ("There is no provision in the Act *excepting* the application of [Civil] Rule 6(e)....") (emphasis added); *see also Great Am. Indem. Co. v. Belair,* 160 F.Supp. 784, 785 (D.Conn.1957) (same).

**10.** Under the LHWCA, employers may recoup overpayments only as *credits* against compensation payments due the employee in the future. *See* 33 U.S.C. §§ 908(j), 914(j), 922; *see also Ceres Gulf,* 957 F.2d at 1201. Thus, if a compensation order is vacated in its entirety, payments previously made are essentially unrecoverable. *Id.*

**11.** LHWCA § 914(f) already provides a substantial disincentive to frivolous employer challenges to compensation awards designed to postpone payments to an injured employee. Before a compensation order enters, payments more than 14 days overdue trigger 10% interest assess-

ployee seeks to obtain a district court enforcement order under section 921(d) which may lead to contempt proceedings against the employer for noncompliance. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 103, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987) ("Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons *must be satisfied.* '[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.' ") (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946)) (emphasis added); *Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.,* 953 F.2d 21, 23–24 (1st Cir.1992) (holding that actual notice of lawsuit is no substitute for substantial compliance with FRCP 4(d)(1) [requiring service on person of defendant, on suitable resident at defendant's dwelling, or on defendant's "agent"]; "a [ ] judgment entered by a court which lacks jurisdiction over the person of the defendant is *void,* and may be set aside *at any time* pursuant to Fed.R.Civ.P. 60(b)(4). Personal jurisdiction is established either by proper service of process or by the defendant's waiver of any defect in the service of process.") (emphasis added); *Jardines Bacata, Ltd. v. Diaz–Marquez,* 878 F.2d 1555, 1559 (1st Cir. 1989) ("[I]n the ordinary course, the district court acquires jurisdiction over a defendant *only by service of process....*") (emphasis added). Accordingly, as we cannot find that Jones waived service of process, *see supra* note 4, we vacate the district court enforcement order, and remand for service of process pursuant to Fed.R.Civ.P. 4.

## II. *Equitable Defenses and the State-law Counterclaim.*

Jones asserted two affirmative defenses and a state-law counterclaim based on allega-

tions that Williams committed perjury before the ALJ in March 1980, and that, as a direct consequence, the ALJ found, incorrectly, that "no laborious work" had been performed by Williams after October 1978. At the October 23, 1992 hearing before the magistrate judge, Jones proffered three affidavits from individuals who had accompanied Williams on numerous clamming and lobstering expeditions between October 1978 and March 1981. These affidavits attest that Williams engaged in the very types of heavy labor and lifting explicitly disclaimed in his testimony before the ALJ in 1980. Jones contends that the identity of the affiants could not have been discovered earlier in the exercise of reasonable diligence, since Jones only learned of their existence through a "chance conversation" in August or September of 1992.

With respect to the affirmative defenses, Jones requested alternative forms of equitable relief: (1) denial of the enforcement order on the ground that a party who obtains a compensation award through fraud is not entitled to its enforcement by injunction, or (2) a temporary stay of the section 921(d) enforcement action pending administrative relief from the DOL. With respect to the state-law counterclaim, *see* Me.Rev.Stat.Ann. tit. 14, § 870 (1992) (damages action for perjury), Jones requested compensatory and punitive damages.

The district court held that it had no "jurisdiction"—hence no discretion under LHWCA section 921(d)—to refuse to enforce the compensation order, except on the two grounds enumerated in the LHWCA, neither of which was contested by Jones; namely, that Jones was not in default or that the compensation order was not made and served "in accordance with law."[12] On related grounds, the district court refused to exer-

ments. *See* 33 U.S.C. § 914(e). Defaults in payments following entry of a compensation order trigger 20% interest assessments. *See id.* § 914(f).

12. The magistrate judge principally relied on *Thompson v. Potashnick Constr. Co.,* 812 F.2d 574 (9th Cir.1987), and *Marshall v. Barnes & Tucker Co.,* 432 F.Supp. 935 (W.D.Pa.1977). In

*Thompson,* the Ninth Circuit broadly stated that a district court's role in a § 921(d) proceeding is limited to screening for procedural defects in the DOL proceedings and that "the district court has no jurisdiction over the *merits* of the litigation." *Thompson,* 812 F.2d at 576 (emphasis added). The *Thompson* court was not asked to consider the sufficiency of service of process in the district court proceeding.

cise pendent jurisdiction over Jones's state-law counterclaim. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The recommended decision did not address the request for a temporary stay of the section 921(d) enforcement proceedings.

On appeal, Jones contends that the district court viewed its equitable powers under section 921(d) too narrowly. *See* Restatement (Second) of Judgments § 70, cmt. a (1982) (a court of equity will not enforce a judgment obtained by fraud). Although the district court may have painted with too broad a brush, *see, e.g., infra* notes 14 and 18, we think its core conclusions were nonetheless sound.

### A. Equitable Power to Refuse Injunctive Enforcement.

■ An enforcement order under LHWCA section 921(d) may take the form of a writ of injunction, a traditional equitable remedy which may expose the enjoined party to the district court's coercive contempt powers. Accordingly, fraud and "unclean hands" historically have been regarded as valid equitable defenses to injunctive relief, *Loglan Inst., Inc. v. Logical Language Group, Inc.,* 962 F.2d 1038, 1042 (Fed.Cir.1992), and absent a controlling statute a federal court is presumed to possess the broad discretion and equitable power to configure its remedy to suit the needs of the case. Even in the context of congressionally created injunctive remedies, the Supreme Court has said that "[u]nless a statute in so many words, *or by a necessary and inescapable inference,* restricts the court's jurisdiction in equity, the *full scope* of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946) (emphasis added). *See Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) ("[W]e do not lightly assume that Congress has intended to depart from established [equity] principles.").[13]

Under this rubric, the first question we confront is whether the LHWCA deprives the district court of its traditional discretionary powers to withhold equitable relief for the enforcement of a compensation award obtained through an employee's fraud.[14]

---

In support of its position, the Ninth Circuit cited *Marshall,* which looked to recent legislative history for guidance. Prior to 1972, the district court had served both as an appellate court, reviewing the ALJ's compensation orders, *and* as the forum in which the employee could seek enforcement of a final compensation order. In 1972, Congress established the BRB, which assumed the appellate role previously performed by the district court. *See* H.R.Rep. 1441, 92d Cong., 2d Sess. 12 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4709. The *Marshall* court concluded that Congress intended, by its LHWCA amendments in 1972, to withdraw district court jurisdiction to consider any issue relating to the underlying *merits* of compensation orders. *Marshall,* 432 F.Supp. at 937.

**13.** *See also Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); *NLRB v. P*I*E Nationwide, Inc.,* 894 F.2d 887, 892 (7th Cir.1990) (contrasting FTC orders, which are self-executing, with NLRB orders as to which Congress has interposed the district court as an independent enforcement arbiter, recognizing that the "potential severities of contempt" counsel "a complementary power of equitable restraint and forbear-

ance"); *cf. Pyrodyne Corp. v. Pyrotronics Corp.,* 847 F.2d 1398, 1402 (9th Cir.) (noting that owner of incontestable mark under Lanham Act "generally entitled to injunctive relief," but if equitable defenses are interposed, "the grant of injunctive relief is not a ministerial act flowing as a matter of course"), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).

**14.** *Marshall,* 432 F.Supp. 935, relied on below, as well as by the Ninth Circuit in *Thompson, see supra* note 12, offers only limited guidance. In *Marshall,* the employer attempted to litigate core factual issues (*e.g.,* LHWCA coverage and statute of limitations) *for the first time* in a § 921(d) proceeding, having failed to raise them before the ALJ, or to appeal the compensation order to the BRB. *Id.* at 937. The *Marshall* court correctly relied on the fact that, by its amendments to the LHWCA in 1972, Congress unequivocally divested the district court of all appellate functions relating to ALJ compensation orders. But *Marshall* did not involve the more difficult problems posed by newly discovered evidence of fraud. Arguably, at least, successful invocation of an equitable defense *to enforcement* would not work an *appellate* affirmance, modification, or vacation of the underlying compensation order, but merely a refusal to deploy the equitable powers of the court in aid of a judgment fraudulently obtained. Thus, *Marshall's* admonition that the

Since section 921(d) contains no explicit delimitation of the district court's equitable powers,[15] we must look to the LHWCA's remedial framework as a whole.

■■■ The LHWCA affords Jones an adequate remedy for redressing any fraud alleged in the affirmative defense. Eschewing conventional *res judicata* principles, section 922 allows an employer to request the ALJ to reconsider the case where there has been a "change of conditions" or "mistake of fact" warranting modification or suspension in compensation payments. *See* 33 U.S.C. § 922; *see also* 20 C.F.R. § 702.373; *Hudson v. Southwestern Barge Fleet Servs., Inc.*, 16 Ben.Rev.Bd.Serv. 367, 369 (1984) (holding that § 922 was "intended by Congress to displace traditional notions of *res judicata*") (citing *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968)).[16] "[F]acts relating to the nature and extent of a claimant's disability typically are the subject of modification proceedings." *Williams v. Geosource, Inc.*, 13 Ben.Rev.Bd.Serv. 643, 645 (1981). "The factfinder [ALJ] has broad discretion to correct mistakes of fact, whether they be demonstrated by *new evidence,* cumulative evidence, or further reflection upon the evidence initially submitted." *Id.* (emphasis added). The overarching criterion for reopening a compensation award under the

LHWCA is whether reexamination would serve the "interests of justice." *O'Keeffe v. Aerojet–General Shipyards, Inc.,* 404 U.S. 254, 255–56, 92 S.Ct. 405, 406–07, 30 L.Ed.2d 424 (1971). Perjured testimony resulting in an erroneous finding of fact concerning the nature or extent of an employee's disability would seem to come squarely within the realm of a "mistake of fact."

■■■ On October 14, 1992, days before the recommended decision issued in this case, Jones filed a petition for modification pursuant to LHWCA section 922.[17] In these circumstances, and against this legislative framework, we think there are at least two sound reasons for not inferring a congressional intention to dedicate two forums to the task of assessing alleged "mistakes of fact" relating to an employee's testimony before the ALJ. First, where newly discovered evidence of fraud implicates the evidentiary basis for an employee's compensation claim, the LHWCA discloses a decided preference for utilizing the DOL's in-house expertise in resolving the dispute. *See, e.g., Crowell v. Benson,* 285 U.S. 22, 46, 52 S.Ct. 285, 290, 76 L.Ed. 598 (1932) (the LHWCA provides "a prompt, continuous, expert and inexpensive method for dealing with a class of questions of fact which are *peculiarly suited* to examination and determination by an administrative agency specially assigned to that task")

district court's function is reduced to "screening compensation orders for procedural defects" does not purport to preclude exercise of the court's traditional discretionary power to grant or withhold equitable relief. *See infra* note 18.

15. The magistrate judge's reliance on the "imperative language" of § 921(d) could not fully resolve the issue. *See supra* pp. 252–53. Section 921(d)'s language—"shall enforce"—does not call for a blanket preemption of the district court's traditional equitable powers. *See, e.g., Hecht,* 321 U.S. at 329, 64 S.Ct. at 591 (holding that the phrase " 'shall be granted' [in the injunctive enforcement provision of the Emergency Price Control Act of 1942] is less mandatory than a literal reading might suggest"; "[w]e cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made").

16. Section 922 may be invoked before or after a compensation award is entered. *See, e.g., Craig*

*v. United Church of Christ,* 13 Ben.Rev.Bd.Serv. 567, 568–69 (1981). Although § 922 is subject to a one-year limitations period, a defaulting employer may restart the tolling period at any time by making a single compensation payment. *See* 33 U.S.C. § 922 (modification award can be filed "at any time prior to one year after date of last payment of compensation"). Thus, recourse to § 922 would appear to afford more flexibility for setting aside a fraudulent award than is provided under Fed.R.Civ.P. 60(b)(3).

17. Section 922 is not the only antidote for fraud under the LHWCA, which likewise authorizes the imposition of criminal penalties (fine and imprisonment) against "[a]ny person who willfully makes any false or misleading statement or representation for the purpose of obtaining any benefit or payment under this Chapter." 33 U.S.C. § 931. In addition, costs may be awarded to the opposing party in proceedings brought on claims or orders "without reasonable ground." *Id.* § 926.

(emphasis added); *cf. Youghiogheny & Ohio Coal Co. v. Vahalik*, 970 F.2d 161, 162 (6th Cir.1992) ("the benefits of agency expertise become irrelevant" under the LHWCA *only after* "claim determination" is complete).[18]

■ Under either section 921(d) or 922, the factfinder would be required to decide: (1) whether Jones could have discovered the putative fraud earlier, in the exercise of due diligence; (2) whether the affidavits proffered by Jones, together with the record evidence in the case before the DOL, credibly suggest that Williams misrepresented his physical capacities and activities during the relevant period; and (3) whether the putative perjury was sufficiently material to undermine the ALJ's finding of temporary total disability. *See General Dynamics Corp. v. Director, Office of Workers' Compensation Programs*, 673 F.2d 23, 25 (1st Cir.1982) (in reopening case, ALJ "must balance the need to render justice against the need for finality in decisionmaking," and justice is not necessarily served where the employer "could have presented his side of the case at the first hearing . . . ."); *see also McCord v. Cephas*, 4 Ben.Rev.Bd.Serv. 224, 225 (1976) (employer not entitled to modification if it exhibits a bad faith effort to relitigate issues *ad nauseam*). We think the DOL is better positioned to address such issues in these circumstances.

Second, section 922 modification rulings are appealable to the BRB and to the court of appeals. *See* 33 U.S.C. § 921(b), (c); *O'Loughlin v. Parker*, 163 F.2d 1011, 1013 (4th Cir.1947) (ALJ's decision to reopen under section 922 is reviewed for abuse of discretion). Similarly, an employer would be allowed an appeal from a district court decision which discounted the employer's equitable defenses and directed enforcement of a compensation award. To allow the section 922 and the section 921(d) proceedings to go forward simultaneously would open up the possibility of inconsistent rulings on the fraud claim, which ultimately would have to be resolved by the court of appeals in either event.

As we can discern no good purpose for such a needless duplication of administrative and judicial effort, we conclude that LHWCA section 921(d), viewed in broad context, gives rise to the "inescapable inference," *see Porter*, 328 U.S. at 398, 66 S.Ct. at 1089, that Congress did not intend the type of fraud defense here presented by Jones to be adjudicated by the district court but by the DOL.

### B. *Stay of Enforcement.*

The remaining question is somewhat narrower: may the district court in a section 921(d) proceeding temporarily enjoin enforcement of a compensation order pending administrative resolution of an employer's petition for modification under section 922?[19] Jones contends that he will be harmed irreparably absent a stay of the section 921(d) enforcement proceeding, because the compensation payments he is compelled to make prior to any section 922 modification order would not be recoverable. *See supra* note 10.

■ Only two LHWCA provisions explicitly allow stays of "effective" compensation orders. *See* 33 U.S.C. §§ 921(b) (stay pending appeal to BRB), 921(c) (stay pending appeal from BRB to court of appeals), thus underscoring the strong LHWCA policy favoring prompt compensation payments even though the employee's entitlement to disability benefits remains in genuine dispute. Stays pending administrative and judicial review are available only on a showing of "irreparable injury." *See Henry*, 704 F.2d at 865. It is not enough that the employer demonstrate that interim payments would be unrecoverable absent a stay, nor that the employer is experiencing financial difficulty in making payments. *Edwards v. Director,*

---

18. On the other hand, while we have no occasion to take a position in this case, some equitable defenses (*e.g.,* laches, estoppel), to the extent premised on employee conduct *postdating* the compensation order, might require resolution of factual issues not peculiarly suited to agency expertise. *Cf. supra* note 14.

19. We address this issue in the interests of judicial economy. It is possible, even likely, that Jones's § 922 petition will have been acted upon by the DOL before Jones has been served with process pursuant to Civil Rule 4 following remand to the district court. If not, it seems quite likely that Jones would renew his request for a stay of the § 921(d) enforcement proceeding.

*Office of Workers' Compensation,* 932 F.2d 1325, 1329 (9th Cir.1991). "Irreparable injury" will be found only in *extraordinary* circumstances. *Id.*

 Unlike the minimal time delays required to effect proper service of process, *see supra* pt. I, a stay of section 921(d) enforcement proceedings while an employer pursues a modification ruling from the DOL (and, perhaps, pending appellate review) threatens a lengthy delay in the previously ordered compensation payments to the employee. Therefore, under the "inescapable inference" standard established in *Porter,* 328 U.S. at 398, 66 S.Ct. at 1089, we must conclude that the LHWCA divests the district court of the equitable power to defer its entry of a section 921(d) enforcement order pending the outcome of a section 922 modification proceeding unless the employer first establishes "irreparable injury." As we have noted, Jones's answer did not allege facts sufficient to establish irreparable injury, nor does the record suggest a basis for such a showing. Thus, the magistrate judge did not err in failing to act on the request for a temporary stay.

### III. *Conclusion.*

The district court order directing enforcement of the compensation order pursuant to LHWCA section 921(d) must be vacated due to lack of compliance with the service of process requirements imposed by Fed. R.Civ.P. 4 and 81(a)(6). The case must be remanded to permit Williams to effect service of process upon Jones. At such time as service of process is effected, Jones should be permitted to submit for district court consideration any order obtained in the LHWCA section 922 modification proceeding, failing which the district court may reinstate the section 921(d) enforcement order previously entered.

*The enforcement order is vacated and the case is remanded to permit service of process and for further proceedings in accordance herewith. Costs are awarded to defendant-appellant.*