

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-1994

# Bethenergy Mines v. Dir. Office of Workers' Comp., et al.

Precedential or Non-Precedential:

Docket 93-3428, 93-3429, 93-3430;93-3431, 93-3432 and 93-3463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bethenergy Mines v. Dir. Office of Workers' Comp., et al." (1994). *1994 Decisions.* Paper 112.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-3428, 93-3429, 93-3430,
93-3431, 93-3432 and 93-3463


BETHENERGY MINES, INC.
                              Petitioner No. 93-3428

                    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
        United States Department of Labor and
          CATHERINE PIERSON, widow/BERNARD,
                              Respondents



BETHENERGY MINES, INC.
                              Petitioner No. 93-3429

                    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor and WILLIAM LEJUENE,
                              Respondents



BETHENERGY MINES INC.
                              Petitioner No. 93-3430

                    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor and THOMAS GRASSA,
                              Respondents



BARNES AND TUCKER COMPANY,
                              Petitioner No. 93-3431

                    v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor and GEORGE LUBERT,

Respondents

BETHENERGY MINES INC.
                              Petitioner No. 93-3432

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
     United States Department of Labor and
     MARY BOHACHICK, widow/SAMUEL,
                              Respondents

BETHENERGY MINES, INC.
                              Petitioner No. 93-3463

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
     United States Department of Labor and Industry;
     PATRICIA J. DOTY, (o/b/o James Levanoff Deceased),
                              Respondents

On Petitions for Review of Orders of the Benefits Review Board
(Benefits Review Board Nos. 92-2703/04/05/2685/86 & 93-252 BLA)

Argued May 6, 1994

Before:  SLOVITER, Chief Judge, HUTCHINSON, Circuit Judge,
          and DIAMOND,[*] District Judge

(Filed August 15, 1994)

John J. Bagnato (Argued)
Spence, Custer, Saylor, Wolfe & Rose
Johnstown, PA  15907

Mari Ann Hathaway
Ceisler, Richman, Smith

---

[*].  Hon. Gustave Diamond, United States Senior District Judge for
the Western District of Pennsylvania, sitting by designation.

Washington, PA  15301
  Of Counsel

        Attorneys for Petitioners

Thomas S. Williamson, Jr.
  Solicitor of Labor
Donald S. Shire
  Assistant Solicitor
Michael J. Denney
  Counsel for Enforcement
Deborah E. Mayer (Argued)
United States Department of Labor
Office of the Solicitor
Washington, DC  20210

        Attorneys for the Director,
        Office of Workers' Compensation Programs


                OPINION OF THE COURT

SLOVITER, Chief Judge.

        The issue presented by this appeal is a jurisdictional

one pending as well in three other courts of appeals[1] – whether

the administrative bodies that adjudicate black lung claims or

the district courts have jurisdiction to resolve disputes

regarding interest assessed against coal mine operators on

reimbursements to the Black Lung Disability Trust Fund (the

"Fund") for medical benefits that the Fund previously paid to or

on behalf of claimants.  Underlying this jurisdictional dispute

is a significant legal issue, which is the authority of the

Department of Labor (the "Department") to assess interest against

_____

[1].  The other cases pending are Sea "B" Mining Company v.
Director, OWCP, No. 93-1784 (4th Cir., filed June 22, 1993,
argued Apr. 12, 1994); B & S Coal Company v. Director, OWCP, 93-
3665 (6th Cir. filed June 21, 1993); Peabody Coal Company v.
Director, OWCP, 93-2597 (7th Cir. filed July 22, 1993, argued
Feb. 23, 1994).

operators and carriers on such claims for the period before the responsible party has had the opportunity to review the data supporting the medical benefit. Because of the jurisdictional dispute, the legal issue has not been presented here or in the other three circuits, despite the apparent agreement among the parties that there is not likely to be much litigation over the amount of interest once that underlying issue is finally resolved.

In the matter before us, the Benefits Review Board (the "Board" or "BRB") determined that these actions may only be heard by the district courts. Accordingly, it affirmed the decision of the Administrative Law Judge dismissing the actions. BethEnergy Mines, Inc. and Barnes and Tucker Company, coal mine operators, filed this petition for review as part of a series of test cases. This court has jurisdiction over petitions for review of final orders of the Benefits Review Board pursuant to 33 U.S.C. § 921(c) (1988).

I.

A.

Background

The Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 et seq., establishes a comprehensive legislative scheme designed to compensate miners for medical problems and disabilities related to pneumoconiosis (black lung disease).

The Act incorporates by reference the claim management and adjudication procedures of the Longshore and Harbor Workers' Compensation Act (the "Longshore Act") to govern the Department

of Labor's administration of Part C of the Act (the employer-funded federal workers' compensation program applicable to employees who have become totally disabled or died due to pneumoconiosis.)  See 30 U.S.C. § 932(a) (incorporating most of 33 U.S.C. §§ 901-950); see also Louisville and Nashville R.R. Co. v. Donovan, 713 F.2d 1243, 1247 n.2 (6th Cir. 1983), cert. denied, 466 U.S. 936 (1984).

In this case, our concern is with claims made to the Department of Labor for medical benefits only.  Therefore, there is no need to review the history of the involvement of the Social Security Administration and the manner of resolving claims made for miners' disability or death, all of which has been reviewed in prior cases.  See, e.g., Pittston Coal Group v. Sebben, 488 U.S. 105 (1988); Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987); Elliot Coal Mining Co. v. Director, OWCP, 17 F.3d 616, 627-628 (3d Cir. 1994); Helen Mining Co. v. Director, OWCP, 924 F.2d 1269, 1271-72 (3d Cir. 1991).

As is set forth in these cases, the Act established the Black Lung Disability Trust Fund, which is financed by a manufacturer's excise tax on coal.  That Fund pays benefits directly to claimants not only when there is no responsible operator, but also before a responsible operator is determined and in other circumstances established by law.  See e.g., Elliot Coal, 17 F.3d at 628; Helen Mining, 924 F.2d at 1272; 20 C.F.R. § 725.522 (1993).

In certain circumstances, as those presented in these cases, when miners seek payment of medical expenses incurred for

treatment of pneumoconiosis ("medical benefits only" or "MBO" claims), the Fund pays claimants before operator liability is determined, see 20 C.F.R. § 725.701A(b), and the Department will seek reimbursement from the responsible operator.  Sometime in 1988, the Department adopted a new agency policy to collect interest on medical expenditures made by the Fund and later reimbursed by the operator or carrier.  Pursuant to this policy, the date on which the Fund paid the medical bill is the accrual date for interest.  See 20 C.F.R. § 725.608(b).

B.

Proceedings in these cases

Although the facts of each of the six consolidated cases vary somewhat, those common to all make them appropriate for joint disposition here. In each case, after determination that a valid MBO claim had been submitted, the district director[2] approved the claimant's request for medical treatment expenses; determined that one of the petitioners was the responsible operator; and, either some time before or after determination of the responsible operator, received a request from the claimant or his medical providers for payment for specific bills or treatment which, after the Department or its agent approved, was paid by the Trust Fund.[3] Thereafter, the Department sought reimbursement from the operator. In many of the cases the operator, as is its right, requested documentation for the medical expenses. In all of the cases before us, the operator ultimately reimbursed the Fund for its payment (referred to by the Operators as reimbursement of the "principal" paid.)

Following the operator's acceptance of responsibility for the MBO, the Department of Labor, pursuant to Department

_____

[2]. By "district director" we refer to the initial screening officer of the Office of Workers' Compensation Programs of the Department of Labor. This individual may also be referred to as the "deputy commissioner" in the relevant statutes. See, e.g., 33 U.S.C. § 919(a) ("a claim for compensation may be filed with the deputy commissioner").

[3]. The determination that the miner is eligible for medical benefits does not automatically entitle the claimant to payment of specific medical expenses, which must be shown to be related to pneumoconiosis.

policy, billed the operator for the interest due on the underlying claim.  As noted above, the interest was assessed from the date the Fund paid the claim.  In the cases before us, it appears that this interest period may have covered from five to nine years.  App. at 94-97; App. at 138, 140, 141.  In each case, the operator challenged this assessment of interest and the case was referred to Administrative Law Judge G. Marvin Bober, who consolidated the six cases for joint resolution.  The ALJ, believing that the issue was governed by the decision of the Court of Appeals for the Sixth Circuit in Vahalik v. Youghiogheny & Ohio Coal Co., 970 F.2d 161 (6th Cir. 1992), dismissed the cases for lack of jurisdiction in September 1992.

The Operators appealed the six cases to the Benefits Review Board, which held them in abeyance pending its resolution of Brown v. Sea "B" Mining Co., 17 Black Lung Rep. (MB) 1-115, 1993 WL 172283 (Ben. Rev. Bd. 1993) (en banc).  After it decided Sea "B", the Board dismissed these cases for lack of subject matter jurisdiction.  The Operators appealed this decision to this court, filing petitions for review in the six cases on September 2 and 15, 1993.

II.

The existence of subject matter jurisdiction is a question of law over which this court exercises plenary review.  See Connors v. Tremont Mining Co., 835 F.2d 1028, 1029 (3d Cir. 1987).

A.

Right to a Hearing Before an ALJ

The Operators argue that the failure of the ALJ and the Board to exercise jurisdiction over this case has denied them the right to a hearing and review thereof as guaranteed in 33 U.S.C. §§ 919 and 921 (1988). The Act provides that claims are filed with the deputy commissioner who has "full power and authority to hear and determine all questions in respect of such claim." 33 U.S.C. § 919(a) (emphasis added). Should any interested party so desire, the deputy commissioner must order a hearing before an administrative law judge. See 33 U.S.C. § 919(c) and (d); Pyro Mining Co. v. Slaton, 879 F.2d 187, 190 (6th Cir. 1989) ("according to statute, [interested parties] have a right to a hearing before an administrative law judge on all questions in respect of a claim.").

The Act provides that following this determination there may be an appeal to the Board, 33 U.S.C. § 921(b)(3), and a petition for review thereafter to the court of appeals, id. § 921(c). See Krolick Contracting Corp. v. Benefits Review Bd., United States Dep't of Labor, 558 F.2d 685, 687-88 (3d Cir. 1977). The question before this court, then, is whether the Operators' challenge to the interest assessed against them is a "question[] in respect of [a] claim" such that it must be referred to an ALJ pursuant to 33 U.S.C. § 919 or whether, as the Department argues, the challenge concerns a collateral attack on a final compensation order, jurisdiction over which rests in the district court pursuant to 30 U.S.C. § 934(b)(4)(A).

The Operators recognize that after a black lung claim is determined on the merits by either an award or acceptance of liability by an operator, they are obliged to reimburse the Fund for the amount paid plus what the Operators term post-judgment interest, i.e., interest which runs from 30 days after the award or the acceptance of liability.  See 30 U.S.C. § 932(d).

The Operators contend that the charges assessed against them here constitute prejudgment interest, which is not authorized under the Act.  See, e.g., Bethlehem Mines Corp. v. Director, OWCP, 766 F.2d 128, 131 (3d Cir. 1985); Youghiogheny & Ohio Coal Co. v. Warren, 841 F.2d 134, 138-39 (6th Cir. 1987).[4] They reason that because these challenges to interest assessed require interpretation and application of the Act and its enforcement scheme, they constitute "questions in respect of such claim."

The Department's position is that because the interest assessment involves a dispute solely between the Department and the operator, it does not constitute a question "in respect of such claim."  The Department's position is that the "claim" within the meaning of section 919, which triggers the right to review through the administrative process, is the claim on behalf of the disabled or deceased miner (the claimant).

---

[4].  The Department disputes the characterization of the interest assessed as "prejudgment" for various reasons.  Because the nature of this interest is not before the court at this time, we need not consider the appropriate classification thereof and use the term for convenience.

This construction of "claim" has statutory support. The statute provides that a claim must be filed with "the deputy commissioner in the compensation district in which such injury or death occurred." 33 U.S.C. § 913(a). Section 919(d), which governs "Procedure in respect of claims," provides that "a claim for compensation may be filed with the deputy commissioner . . . any time after the first seven days of disability following any injury, or at any time after death." 33 U.S.C. § 919(a). Because the "claim" to which these sections refer is that of the injured or deceased miner, the administrative procedure outlined in the subsections (c) and (d) of section 919 is available only to a party (usually the employer-operator or its carrier) who seeks to challenge some aspect of the miner's "claim," such as the miner's eligibility for some or all of the compensation sought or granted.

It is not disputed that determinations of underlying operator liability in MBO cases raise questions in respect of a claim. Though framed as contests between the particular operator and the Fund over reimbursement, these determinations provide the means by which an operator may challenge the validity of all or part of the miner's initial claim, including each medical expense, even though it has already been paid by the Fund. Proceedings before the ALJ and the Board in these matters thus center on the evaluation of the claimant's entitlement to payments already disbursed by the Fund. See, e.g., Stiltner v. Doris Coal Co., 14 Black Lung Rep. (MB) 1-116, 1990 WL 284122 (Ben. Rev. Bd. 1990) (en banc) (affirming award of medical

benefits and thus ordering operator and carrier to reimburse the Fund based on determination that miner's respiratory conditions were related to coal mine employment), rev'd in part, Doris Coal Co. v. Director, OWCP, 938 F.2d 492 (4th Cir. 1991); Skaggs v. Imperial Colliery Co., 14 Black Lung Rep. (MB) 3-311 (Admin. Law Judge 1990) (evaluating employer's challenge to certain medical bills already paid based on its contention that they were not related to miner's pneumoconiosis); Wright v. Beth-Elkhorn Coal Corp., 14 Black Lung Rep. 3-692 (MB) (Admin. Law Judge 1990) (employer not liable to reimburse Fund for medical expenses because miner was not eligible for them and Fund had paid them erroneously).

These underlying liability determinations stand in sharp contrast to the Operators' challenge to the Department's assessment of interest against them for the period before they accepted responsibility for the medical benefits. The interest sought is not to benefit the claimant, nor is it sought on behalf of the claimant. It is sought merely to reimburse the Fund for the time-value of money expended by the Fund when it paid for the miner's medical benefits. This latter dispute is one exclusively between the Operators and the Fund. As a result, although the demand for interest is predicated in the first instance on the fact that the miner filed the claim, it cannot be said to raise any "questions in respect of such claim," all of which have been resolved by then.

It follows that sections 919 and 921 do not provide the Operators the right to a hearing before an administrative law

judge, nor to an appeal to the Benefits Review Board in these interest cases.  Instead, the Operators' opportunity to challenge this interest assessment is controlled by those statutory provisions concerning access to the district courts for enforcement of black lung liability.

B.

District Court Jurisdiction

District court jurisdiction arises under the Act under two statutory provisions: 33 U.S.C. § 921(d), one of the incorporated provisions of the Longshore Act, and 30 U.S.C. § 934, a provision within the Black Lung Act itself.  In Connors v. Tremont Mining Co., 835 F.2d 1028 (3d Cir. 1987), we set forth the requirements for district court jurisdiction under 33 U.S.C. § 921(d) (Section 21 of the Longshore Act) as follows: "there must be . . . first, [a] final compensation order [that] has been effectuated, and second, . . . the responsible operator has failed to comply with that compensation order."  Id. at 1031.

District court access is also provided by 30 U.S.C. § 934 (Section 424 of the Black Lung Act).  Subsection (b)(2) provides:

> If any operator liable to the fund under paragraph [934(b)(1)] refuses to pay, after demand, the amount of such liability (including interest), then there shall be a lien in favor of the United States for such amount on all property and rights to property, whether real or personal, belonging to such operator.

30 U.S.C. § 934(b)(2) (emphasis added).  Section 934(b)(4)(A) provides:

> In any case where there has been a refusal or neglect
> to pay the liability imposed under paragraph [934(b)]
> (2), the Secretary may bring a civil action in a
> district court of the United States to enforce the lien
> of the United States under this section with respect to
> such liability or to subject any property, of whatever
> nature, of the operator, or in which he has any right,
> title or interest, to the payment of such liability.

Id. (emphasis added).

We have recognized the interaction between the two sections giving the district courts enforcement jurisdiction as follows:

> [i]f an operator fails to pay an award of disability
> benefits for which he is liable, the successful
> claimant or the Secretary may bring an action in
> district court to enforce the order.  See 33 U.S.C. §
> 921(d).  Moreover, the Secretary may bring an action to
> enforce a lien against an operator who fails to make
> payments to the Black Lung Disability Trust Fund.  30
> U.S.C. § 934(b)(4)(A).

Compensation Dep't of Dist. Five, United Mine Workers of America v. Marshall, 667 F.2d 336, 339 n.6 (3d Cir. 1981).  Thus, 33 U.S.C. § 921(d) enforces the operator's liability to pay benefits and 30 U.S.C. § 934(b) enforces the operator's liability to repay the Trust Fund.

There is no doubt that the Operators have failed to pay the amounts assessed in these six consolidated cases.  They argue, however, that an award is not final under either section 921(d) or 934(b) unless the calculation of the amount due is finally decided, citing Sun Shipbuilding & Dry Dock Co. v. Benefits Review Board, United States Dep't of Labor, 535 F.2d 758, 761 (3d Cir. 1976) (per curiam).  In Sun Shipbuilding, we

held that a decision is not final where the "extent of damage remains undetermined."  535 F.2d at 760.  Here, in each case the amount of underlying liability for the MBO has been clearly and finally determined and is not challenged by the operators.  Thus, Sun Shipbuilding is inapposite.

The Operators also argue that the district director's determinations of interest are not final because they were afforded no opportunity to contest them.  Whatever persuasiveness this claim may have in other contexts, in these cases the Operators have withdrawn their controversions to the specific medical expenses.  Thus, there was a final determination in each case.

We do not disagree that the Act gives the operators no right to challenge the interest determination in the administrative process.  Once the liability of the particular operator and the medical expenses for each claimant has been determined, the operator's liability for that amount plus interest becomes fixed as a matter of law.  See, e.g., 30 U.S.C. § 934(b)(1) (once the operator's liability is determined, "then the operator is liable to the United States for repayment to the fund of the amount of such benefits the payment of which is properly attributed to him plus interest thereon.").  Indeed, determination of the amount of interest due is a ministerial calculation because the rate is set by law.  See 30 U.S.C. §§ 934(b)(5)(A) and (b)(5)(B) (incorporating by reference schedule provided in 26 U.S.C. § 6621).  It follows that the Department and the Board are correct that the Operators will have the

opportunity to raise their challenge to the imposition of interest as a defense to a district court action brought by the Secretary for enforcement.[5]

Our determination that the district courts, and not the Office of the Administrative Law Judges and the Board, have jurisdiction over the claims presented here is supported by the recent opinion of the Court of Appeals for the Sixth Circuit in Youghiogheny & Ohio Coal Co. v. Vahalik, 970 F.2d 161 (6th Cir. 1992). There, faced with a similar, albeit not precisely the same, situation which this court now considers, the Court of Appeals determined that neither the ALJ nor the Board had jurisdiction over the claim of the Department for interest in a medical benefits case, holding that the Department must file an action in the district court seeking enforcement of its lien and collection on the liability. In Vahalik the operator had paid the initial interest assessment and then received a second assessment on the ground that the first had been based on a miscalculation. The operator resisted payment, asserting the common law defenses of "account stated and settled" and equitable estoppel. Although neither the ALJ nor the BRB questioned their own jurisdiction over the dispute, when the matter was on review before the Court of Appeals the Department challenged the jurisdiction assumed by the ALJ and the BRB over an operator's objection to interest assessed on reimbursement paid to the Fund.

---

[5]. We take no position as to whether the Operators themselves might seek to invoke the district court's jurisdiction by some affirmative filing.

The Vahalik court agreed, reasoning that "[o]nce final eligibility and liability determinations are made, the benefits of agency expertise become irrelevant, and jurisdiction is vested in the district courts for the enforcement of agency orders." Id. at 162.

This does not mean that the Operators will not have an opportunity to challenge the assessment of interest, either on the basis of a legal challenge or on the basis of a disagreement as to calculation. In fact, in Reich v. Youghiogheny & Ohio Coal Co., No. C2-92-793, (S.D. Ohio May 13, 1994), the enforcement action brought by the Department under 30 U.S.C. § 934 to collect the interest at issue in the Vahalik case, the district court thoroughly addressed the challenges raised by the operator to the imposition of interest allegedly due to the Fund. Without commenting on the correctness of the district court's decision regarding the validity of the interest claim (an issue not before us today), we note that the proceeding under that section provided the defendant a full and fair opportunity to litigate its challenges to the interest assessed.

Thus we are satisfied that a district court enforcement proceeding would provide sufficient opportunity to the operators to raise their challenges to the interest assessments. In fact, the Court of Appeals for the First Circuit has recently commented that the enforcement proceeding established by 30 U.S.C. § 921 permits several possible bases for challenging the award in the district court:

> it is . . . clear that the employer may contest factual
> allegations upon which the section 921(d) enforcement
> petition necessarily depends, including the main issue
> whether the employer is in default.  Moreover, arguably
> at least, the employer might be entitled to raise
> factual challenges relating to (1) the amount in
> default, (2) whether new evidence indicates that the
> initial compensation order was procedurally defective,
> or otherwise not "in accordance with law," or (3)
> employee conduct that might tilt the fundamental
> balance of equities in favor of judicial restraint.

Williams v. Jones, 11 F.3d 247, 253 (1st Cir. 1993) (emphasis and footnotes omitted).  The court based this determination on its recognition that a section 921(d) proceeding represents the party's "first and only forum for a full hearing of such factual disputes prior to the issuance of an injunctive enforcement order, with its attendant exposure to coercive contempt proceedings."  Id. at 254.  Thus, we see no reason to conclude that the Operators will not be given a fair opportunity to challenge the validity of the interest assessments in an enforcement proceeding, whether under 33 U.S.C. § 921 or 30 U.S.C. § 934.

Finally, the Operators argue that policy rationales weigh against a rule that would vest jurisdiction in this case and others like it in the district courts.  They argue that there are hundreds of cases which present similar facts, and that Congress could not have intended that these cases be tried in the district courts.  However, at oral argument, the Operators conceded that once the issue of the authority of the Department to assess what they term prejudgment interest is decided by a court of appeals, either on appeal from a district court or via

petition from the Benefits Review Board, few, if any, cases concerning the imposition of interest will arise.

Thus, the Operators' policy argument is reduced to a preference for having the determination of the interest issue determined in an administrative proceeding, apparently because it is less expensive. Even though, as noted above, it is not likely that there will be many grounds for challenging an interest award following determination of the threshold issue, we assume that there may be indeed a number of such instances. Furthermore, we assume that there may be valid reasons to prefer the administrative process for determination of minor money claims over the adjudication of such cases by the district courts. In the cases before us, the amount of interest assessed ranged from $70.03 to $25,671. However, it is not our view as to the appropriate forum that is determinative. Instead, we are dealing with Congress's scheme, and we are not free to make a decision based on our judgment in the matter. If the operators have policy considerations that they believe are persuasive, their resort must be to Congress.

### III.

For the foregoing reasons, we will deny the petition for review of BethEnergy and Barnes and Tucker because we agree with the Board that it lacked subject matter jurisdiction over this dispute.